```
           IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF OHIO
                     EASTERN DIVISION


John Miller, et al.,             :

       Plaintiffs,               :

   v.                            :    Case No. 2:10-cv-917

Reginald A. Wilkinson, et al.,   :    JUDGE EDMUND A. SARGUS, JR.
                                      Magistrate Judge Kemp
       Defendants.               :
```

REPORT AND RECOMMENDATION

This matter is before the Court on a motion for relief from judgment or order under Fed. R. Civ. P. 60(b)(3) or, in the alternative, a motion for order enforcing a judgment or specific act under Fed. R. Civ. P. 70(a) filed <u>pro se</u> by plaintiff Darryl Blankenship. (Doc. 64). Defendants filed a response in opposition to the motion for relief from judgment or motion to enforce a judgment (Doc. 65), and Mr. Blankenship filed a reply brief (Doc. 66). Thus, the motion has been briefed fully and is now ripe for decision. For the reasons set forth below, the Court will recommend that Mr. Blankenship's motion be denied.

I. <u>Background</u>

This case is a spinoff from a prior class action involving the exercise of the Asatru religion in the Ohio prison system. <u>See Miller v. Wilkinson</u>, Case No. 98-cv-275. The Stipulation for Injunctive Relief entered in that case on April 19, 2010 resolved all but two of the class claims for injunctive relief (those were subsequently resolved in an Opinion and Order filed on September 30, 2010), but it did not address any claims for damages which were being pursued by the named plaintiffs or intervenors. In the September 30, 2010 Opinion and Order, the Court severed the damages claims, directed the Clerk to open a new civil action, and gave each potential plaintiff twenty-one days within

which to file an amended complaint asserting his damage claims by "identifying those claims and the defendants against whom they are asserted." Miller v. Wilkinson, 2010 WL 3909119, *13 (S.D. Ohio Sept. 30, 2010).

Plaintiff Darryl Blankenship was the only named plaintiff to file an amended complaint. In his complaint, Mr. Blankenship sought compensatory damages for some $316.00 he spent litigating the prior case and for the twelve years during which he claims to have been denied the right to practice his religion. He also requested punitive and nominal damages, if appropriate.

A settlement conference took place on January 17, 2014. In an order issued on March 28, 2014 following a telephone status conference, the Court stated:

> [t]he parties agreed to all material terms of settlement, which the parties further agreed will be reduced to writing consistent with the time period agreed upon at the conference. The Court hereby incorporates the material terms of settlement agreed upon by the parties, and reserves the right to enforce those terms of settlement.

(Doc. 60). In light of the fact that the case had settled, the Court directed the Clerk of Court to close the case and remove any pending motions as moot. On April 18, 2014, the Court held another telephone conference in this matter.

On May 29, 2014, Mr. Blankenship filed a motion for sanctions against defendants, alleging that they failed to comply with the terms of settlement as agreed to by the parties at the settlement conference on January 17, 2014 and the telephone conference on April 17, 2014. Defendants did not file a response to the motion for sanctions. The Court later terminated the motion as moot, noting that the issue raised in the motion had been resolved.

On January 20, 2015, Mr. Blankenship filed a motion for relief from judgment or order under Fed. R. Civ. P. 60(b)(3) or, in the alternative, a motion for order enforcing a judgment or

specific act under Fed. R. Civ. P. 70(a).  (Doc. 64).  In the motion, Mr. Blankenship argues that defendants have failed to comply with the negotiated settlement and "misrepresented their willingness to do so...."  Id. at 1.  Mr. Blankenship also contends that defendants "committed fraud upon the Court[ ] by entering into the settlement without intentions of complying simply to obtain dismissal of the case."  Id.  On February 9, 2015, defendants filed an opposition to Mr. Blankenship's motion.  (Doc. 65).  On February 16, 2015, Mr. Blankenship filed a reply brief in support of his motion.  (Doc. 66).  Thus, the motion has been briefed fully and is now ripe for consideration.

## II. Discussion

In his motion, Mr. Blankenship first asserts that defendants have failed to comply with Item II, Section 3, of the terms of settlement by refusing to make Asatru books and videos available to inmates.  That portion of the settlement agreement provides:

> Defendants will use best efforts, consistent with existing ODRC policies and regulations, to accept, review, and place in the religious library at each ODRC prison, Asatru videos or publications, without obligating Defendants to pay for such videos or publications and without causing Defendants to violate any copyright laws. Defendants will also use best efforts to obtain Asatru videos located at the Ohio State Penitentiary library, if any exist, and to disseminate them to ODRC prison religious libraries.

(Doc. 64 at 2).  Defendants dispute Mr. Blankenship's assertions and state that:

> As of December 2014, the following Asatru publications were received by ODRC and available for use:
>
> 1. Gods and Myths of Northern Europe by H.R. Ellis-Davidson
>
> 2. Rudiments of Runelore by Stephen Pollington
>
> 3. Nordic Religions in the Viking Age by Thomas A. DuBois
>
> 4. Ways of the Asatru: Beliefs of the Modern, Northern Heathens by Michael J. Smith (PDF downloaded and placed into a binder for loan)

>   5.  The Poetic Edda (located at the Ohio State Penitentiary and available for inter-library loan)
>
>   6.  The Road to Hel (downloaded and available for loan, now also printed version available)
>
>   7.  Heroes of Asgard (downloaded and available for loan, now also printed version available)

(Doc. 65 at 7-8). Defendants attach to their opposition the affidavit of Rebecca Williams, the Library Administrator at the ODRC's Training and Education Center in London, Ohio. Id. at Ex. 1. Ms. Williams avers that the publications referred to by defendants are available for inter-library loan and that library staff have been notified of their availability. Id. at ¶¶6-8. Based upon these facts, defendants argue that they have satisfied their obligation to provide Asatru publications as set forth in the settlement agreement. In reply, Mr. Blankenship does not deny that these books were made available. However, Mr. Blankenship asserts that "[i]n the negotiated settlement Defendants stated they would locate videos at [the Ohio State Penitentiary] to show at other institutions. Within the 90 day report they state 2 videos were found... yet contrary to the settlement those videos have never been made available to inmates at other institutions." (Doc. 66 at 2).

   Mr. Blankenship next contends that defendants failed to comply with Item II, Section 4 of the settlement agreement, which provides that "Defendants will use best efforts to seek out volunteers to provide religious services to Asatru prison inmates." (Doc. 64 at 3). Mr. Blankenship asserts that he:

>   and various Asatru groups[ ] have made nationwide inquiries as to if [sic] any groups or individuals have been contacted by ODRC in regards to providing religious volunteers. To date, neither this Plaintiff, or any known groups, has been able to locate any group or individual who can state that ODRC has contacted them on this matter. (See attached Exhibit "A"). It is Plaintiff's contention that Defendants have not sought out any religious volunteers, and have committed perjury before this Court when in the Ninety Day Report asserted

-4-

>that they had done so (without of course naming whom they contacted or when or by what means).

Id. Defendants provide a detailed explanation of the efforts to find volunteers to provide religious services to Asatru inmates, including those taken before the parties signed the settlement agreement. The actions taken before the parties signed the settlement agreement include communicating with the 6th Night Grove, a religious organization from Dayton, Ohio, and the Hearthstead Kindred, a religious organization from Canton, Ohio. Dr. Wanza Jackson, who was the Religious Services Administrator for ODRC, also communicated with the Teutonic Temple of Asatru and Josh Riggs, "the Thingmen for a Columbus, Ohio Asatru kindred, the Nine Worlds Kindred...," who presented at a chaplains meeting on September 10, 2014. (Doc. 65 at 9). After Mr. Blankenship signed the settlement agreement on April 2, 2014, communication continued with Mr. Riggs, with Mr. Riggs raising and Chaplin Stricklin answering questions about the volunteer opportunity. Chaplain Stricklin also exchanged emails with Ryan Spellman of OhioHeathens.org regarding the volunteer opportunity. In that exchange, Chaplain Stricklin indicated that he sent an email to CentralOhioAsatru.com looking for volunteers. In his reply brief, Mr. Blankenship asserts that defendants failed to seek any volunteers between the date of settlement and their ninety-day report. Mr. Blankenship also alleges that defendants "perpetrated a fraud upon this court when in the 90 day report, Wanza Jackson clearly states that as a result of the settlement she had contacted 'several' Asatru associations." (Doc. 66 at 2).

Mr. Blankenship further contends that defendants failed to comply with Item II, Section 5 of the settlement agreement, which provides that, "[w]ithin ninety (90) days of the final signature of this agreement, Defendants will report to Plaintiff the steps that were taken to comply with Paragraphs three (3) and four (4), above." (Doc. 64 at 3). Mr. Blankenship states that the ninety-

day report fails to outline the steps taken to comply with the settlement agreement. He asserts that, instead, the ninety-day report consists of "bare bones and self serving statements in regards to complying with the settlement...." Id. at 3-4. More specifically, Mr. Blankenship argues that the ninety-day report provides no description of the steps taken to obtain "books and literature" for the Asatru inmates. Id. at 4. He also states that the report fails "to specify what steps [defendants] took to locate religious volunteers...." Id. In opposing Mr. Blankenship's motion, defendants reproduce the ninety-day report. They argue that the report, as originally provided to Mr. Blankenship, complied with their obligation in the settlement agreement. In reply, Mr. Blankenship maintains that the ninety-day report did not comply with the settlement agreement.

Finally, Mr. Blankenship argues that defendants failed to comply with Item II, Section 6 of the settlement agreement, which provides "[w]ithin ninety (90) days of the final signature on this Agreement, Defendants will report to Plaintiff any change in policy regarding the requirements for religious leaders at the Yule meal." (Doc. 64 at 4). Mr. Blankenship argues that the ODRC failed to consistently allow for a Yule meal. He states:

> it has come to pass that ODRC while at some institutions have portrayed that they have attempted to comply, at other institutions the inmates were harassed for the audacity of seeking the meal, were threaten with punitive segregation for shaking hands [sic]. Others were afforded a meal, yet were not informed as to where or when nor issued passes so they missed the meal (good play by ODRC... this was expected). Others were deprived of a meal in order to secure the Yule meal (provided 2 meals that day instead of 3)... and many were simply handed a box of juice with their regular meal for the congregate meal.

Id. at 5. Mr. Blankenship urges that "none of this complies with the letter nor the spirit of the settlement agreement." Id. In response, defendants state that they "agreed only to report to Plaintiff any change in policy regarding religious leaders at the Yule meal[,]" and they complied with that obligation in their

ninety-day report. (Doc. 65 at 12). Mr. Blankenship does not specifically address the Yule meal in his reply brief.

Mr. Blankenship brings the instant motion under Fed. R. Civ. P. 60(b)(3) or, in the alternative, Fed. R. Civ. P. 70(a). Rule 60(b) of the Federal Rules of Civil Procedure "allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence." Gonzales v. Crosby, 545 U.S. 524, 528, 125 S. Ct. 2641, 162 L. Ed.2d 480 (2005)(footnote omitted). The rule provides, in pertinent part:

> On motion and just terms, the Court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party[.]

Fed. R. Civ. P. 60(b)(3). The movant bears the burden of demonstrating that this case falls within the circumstances in Fed. R. Civ. P. 60(b). See Smith v. Kincaid, 249 F.2d 243, 245 (6th Cir. 1957). Further, courts are "not [to] disturb the finality of a judgment without good reason." Broussard v. Johnson, 2001 WL 502799, at *2 (5th Cir. Apr. 27, 2001).

The Court of Appeals has defined fraud for the purpose of evaluating a Rule 60(b)(3) motion as "the knowing misrepresentation of a material fact, or concealment of the same where there is a duty to disclose, done to induce another to act to his or her own detriment." Info-Hold v. Sound-Merchandising, Inc., 538 F.3d 448, 456 (6th Cir. 2008). Further, fraud in this context includes "deliberate omissions when a response is required by law when the non-moving party has volunteered information that would be misleading without the omitted material." Id., quoting Jordan v. Paccar, Inc., 1996 WL 528950, at *6 (6th Cir. Sept. 17, 1996). Consequently, "to establish grounds for relief under Rule 60(b)(3), the moving party need not demonstrate that the adverse party has committed all the elements

of fraud specified in the law of the state where the federal court is sitting, but rather must simply show that the adverse party's conduct was fraudulent under this general common law understanding." Id.

In this case, Mr. Blankenship fails to satisfy his burden of establishing that Rule 60(b)(3) applies. As set forth above, Mr. Blankenship alleges that defendants have not complied with the terms of the settlement agreement because they failed to take sufficient steps to obtain library materials and make those materials available to inmates. He also asserts that defendants have failed to take adequate steps to locate Asatru volunteers. Finally, Mr. Blankenship contends that defendants did not comply with the settlement agreement because the ninety-day report did not set forth the specific steps they took to comply with the agreement. None of these allegations involve the knowing misrepresentation of a material fact, or the concealment of a material fact.

The only allegations of fraud are Mr. Blankenship's assertions that: (1) defendants committed fraud for the purpose of obtaining dismissal of this action when they entered into the settlement agreement because they had no intentions of complying with the agreement and (2) defendants committed fraud when, in the ninety-day report, Dr. Jackson represented that she contacted several Asatru associations after the parties signed the settlement agreement. As to the first allegation, Mr. Blankenship has failed to provide this Court with any proof that defendants had no intention of complying with the terms of settlement. As to the second allegation, defendants attached evidence to their opposition demonstrating that they communicated with Asatru organizations after the parties signed the settlement agreement.

The Court notes that defendants' compliance with the terms of settlement has been less than optimal. In his affidavit, Mr. Blankenship avers that various Asatru individuals or groups have

not been contacted by ODRC regarding volunteer opportunities. In addition, Mr. Blankenship attaches communications from inmates which suggest that Asatru books and videos are not being offered to all of the Asatru inmates and that the Yule meal is being offered, at best, inconsistently. In reviewing Mr. Blankenship's motion under Rule 60(b)(3), however, this Court is not charged with examining the adequacy of the actions taken by defendants to comply with the terms of the settlement agreement or to assess if defendants could have taken additional or more effective steps to accomplish the objectives set forth in that agreement. Rather, this Court's inquiry is limited to an assessment of whether it may relieve Mr. Blankenship from a final judgment or order in this case because of fraud. As set forth above, the Court finds that Mr. Blankenship fails to set forth any evidence of fraud. Consequently, the Court will recommend that the motion be denied to the extent that it is brought under Fed. R. Civ. P. 60(b)(3).

Alternatively, Mr. Blankenship brings his motion under Fed. R. Civ. P. 70(a). Rule 70 of the Federal Rules of Civil Procedure pertains to enforcing a judgment for a specific act. It states, in pertinent part:

> (a) Party's Failure to Act. Ordering Another to Act. If a judgment requires a party to convey land, to deliver a deed or other document, or to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done – at the disobedient party's expense – by another person appointed by the court. When done, the act has the same effect as if done by the party.

Fed. R. Civ. P. 70(a). In his motion, Mr. Blankenship fails to present this Court with proof that defendants have failed to perform a specific act. Although defendants' actions perhaps could have been improved, they fail to warrant action by the Court under Rule 70(a). For the same reason, the Court will not recommend that defendants be held in contempt under Rule 70(e). Based on the foregoing, the Court will recommend that Mr. Blankenship's motion be denied. (Doc. 64).

### III. <u>Conclusion</u>

Based upon the foregoing, the Court recommends that Mr. Blakenship's motion for relief from judgment or order under Fed. R. Civ. P. 60(b)(3) or, in the alternative, a motion for order enforcing a judgment or specific act under Fed. R. Civ. P. 70(a) be denied. (Doc. 64).

### IV. <u>Procedure on Objections</u>

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

/s/Terence P. Kemp
United States Magistrate Judge